**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN BECHAK, | ) | Case No. 4:15 CV 1692 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| ATI WAH CHANG, et al., | ) | |
| | ) | |
| | ) | **ORDER** |
| Defendants. | ) | (Docs. ##87, 88, 106,109) |

Now before the Court are four motions to exclude testimony pursuant to *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  Plaintiff John Bechak seeks to exclude the reports and testimony of Defense experts Richard J. Powals (Doc. #87) and Lawrence G. Doucet (Doc. # 88).  Defendants Veolia ES Technical Solutions, ATI Wah Chang, and ATI Precision Finishing, LLC seek in two motions (Docs. #106 and 109) to exclude testimony of Plaintiff's expert Elizabeth C. Buc.  For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART the parties' motions.

# I. BACKGROUND

The large majority of the alleged facts in this matter remain in dispute. What follows is a brief summary of the allegations relevant to this decision. Plaintiff was injured on December 17, 2011 in an explosion that killed his co-worker while the two men were preparing hazardous waste material for incineration. Plaintiff's employer, Heritage-WTI, Inc., is not a party to this suit. Defendant ATI Precision Finishing, LLC was the generator of the hazardous waste involved in the explosion. Defendant ATI Wah Chang was the owner of the hazardous waste who directed the storage and treatment of the material before shipping it to Heritage-WTI, Inc. for incineration. Defendant Veolia ES Technical Solutions, LLC acted as a waste broker between ATI Wah Chang and Heritage-WTI, Inc. Veolia also provides waste disposal services. Defendant ATI Wah Chang and Heritage-WTI, Inc. entered into a contract for hazardous waste disposal in 1999. Pursuant to the 1999 contract, the covered waste was identified by Defendants as Waste Information Profile No. 43443 and by Heritage-WTI, Inc. as Waste Profile No. 92796-1.

ATI Precision Finishing, LLC had an arrangement with AL Solutions, Inc., a metals recycling facility in Cumberland, West Virginia, for the zirconium fines it generated. In December 2010, zirconium fines spontaneously ignited while being processed by AL Solutions causing an explosion and ending AL Solutions' zirconium recycling operations. As a result of the explosion at AL Solutions, ATI Precision Finishing, LLC could no longer dispose of the zirconium waste it generated in late 2010/early 2011. Thereafter, barrels of waste accumulated at ATI Precision Finishing, LLC and were stored for a period of months, outside, in violation of waste permitting regulations. The material was then shipped to ATI Wah Chang, where was held while ATI Wah Chang attempted to make disposal arrangements.

In late 2011, Heritage-WTI, Inc. was approached by Defendant ATI Wah Chang who inquired whether the facility could accept material pursuant to the 1999 contract for disposal of Waste Information Profile No. 43443/ No. 92796-1, but in non-conforming quantities. Heritage-WTI, Inc. indicated that it could accept the material but that it would be necessary to split the material into quantities that its incinerator could handle. Upon receipt of the material, Heritage-WTI, Inc. began splitting and incinerating it, but one of the first batches placed in the incinerator ignited in the pre-chamber, halting operations. Heritage-WTI, Inc. investigated the cause and attempted a solution. The remaining portion of the batch was incinerated without further incident.

Plaintiff was involved in splitting a further portion of the material when the explosion that injured him occurred. The parties disagree as to whether the material was in fact generated by ATI Precision Finishing, LLC, whether the material was properly identified and transported under applicable regulations, whether the material conformed to Waste Information Profile No. 43443/ No. 92796-1, and whether the material was properly handled both before and after receipt by Heritage-WTI, Inc., among other issues. The parties have retained experts to address the relative burdens, regulatory and otherwise, they bear with regard to the identification and handling of the material as well as the nature of the material itself. The Court will now address the parties' four pending motions to exclude expert reports and testimony with regard to these issues.

## II. STANDARD

Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Under Rule 702, a qualified expert's testimony may be admissible, if:

> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The requirement that expert testimony be evaluated to determine its "reliability" originates in the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Daubert*, the Supreme Court stated:

> Faced with a proffer of expert scientific testimony, ... the trial judge must determine ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert,* 509 U.S. at 592–93. The *Daubert* Court then set forth the following non-exhaustive list of factors for trial courts to use in assessing the reliability of scientific expert testimony: (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *Daubert,* 509 U.S. at 593–94. The *Daubert* Court emphasized, "[m]any factors will bear on [this] inquiry," and there is no "definitive checklist or test." *Daubert*, 509 U.S. at 594–95. Rather, the test for admissibility of expert testimony is a "flexible" one focused on the "principles and methodology" of the expert. *Daubert*, 509 U.S. at 594–95.

In *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the United States Supreme Court affirmed the application of *Daubert*'s principals more generally to all expert testimony admissible under Rule 702. *Id.* at 148. At the same time, the Court acknowledged that the *Daubert* factors do not perfectly address every type of testimony

admissible under Rule 702. *Id.* at 150. Nevertheless, whether or not the proffered expert testimony may be classified as scientific, the trial court is required to review it for both relevance and reliability. *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) ("In essence, *Daubert* and its progeny have placed the district courts in the role of gatekeeper, charging them with evaluating the relevance and reliability of proffered expert testimony with heightened care." (internal quotation marks omitted)).

When evaluating the admissibility of expert testimony under *Daubert*, a trial court's inquiry focuses on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. However, the United States Supreme Court has since clarified: "conclusions and methodology are not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). The Sixth Circuit Court of Appeals explains that where non-scientific expert testimony is involved "the [*Daubert*] factors may be pertinent" or "the relevant reliability concerns may focus upon personal knowledge or experience." *First Tennessee Bank, Nat'l Assn. v. Barreto,* 268 F.3d 319, 335 (6th Cir. 2001) (citing *Kumho Tire,* 526 U.S. at 150); *see also Ellis v. Gallatin Steel Co.,* 390 F.3d 461, 470 (6th Cir. 2004) and *Surles*, 474 F.3d at 295-296.

The gatekeeping inquiry is context-specific and "must be tied to the facts of a particular case." *Kumho Tire,* 526 U.S. at 150 (internal citations omitted); *see also Surles*, 474 F.3d at 295-296. "[C]lose judicial analysis of expert testimony is necessary 'because expert witnesses are not necessarily always unbiased scientists.'" *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 252 (6th Cir. 2001) (quoting *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1352 (6th Cir. 1992)). A touchstone of this analysis is whether a testifying expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kumho Tire*, 526 U.S. at 152.  Due to the numerous difficulties inherent in the gatekeeping role, district courts possess broad discretion to make admissibility determinations. *Pride v. BIC Corp.,* 218 F.3d 566, 578 (6th Cir. 2000).  Indeed, "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire,* 526 U.S. at 142 (emphasis sic) (citing *Joiner,* 522 U.S. at 143).  The Sixth Circuit holds, "[a]s a baseline premise, 'in rulings on the admissibility of expert opinion evidence, the trial court has broad discretion and its rulings must be sustained unless manifestly erroneous.'" *Brainard v. American Skandia Life Assur. Corp.,* 432 F.3d 655, 663 (6th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

Although a district court has broad latitude, the Sixth Circuit has developed some guidance: "Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity. *Newell Rubbermaid, Inc. v. Raymond Corp.,* 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.,* 563 F.3d 171, 177 (6th Cir. 2009)).  The Sixth Circuit further cautions "if a purported expert's opinion was prepared solely for litigation, that may also be considered as a basis for exclusion." *Newell Rubbermaid*, 676 F.3d at 527.  Finally, the proponent of an expert bears the burden of demonstrating that the expert's testimony satisfies *Daubert*. *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 251 (6th Cir. 2001).

## III.   ARGUMENT AND LAW

The parties have challenged the testimony of three expert witnesses.  The Court will consider each expert separately.

### (A)   LAWRENCE G. DOUCET

Lawrence G. Doucet, P.E., D.E.E., is an engineer with experience in engineering, design, and consulting involving incineration systems and equipment, air pollution control systems and equipment, and the management, treatment, and disposal of hazardous and other waste types. He has been responsible for providing technical and economic feasibility studies, system evaluations and diagnostic assessments, environmental permitting, construction documents, and construction administrative services. Mr. Doucet has produced numerous technical articles on incineration, waste management, and environmental compliance, among other topics, including his textbook for a seminar on the "Principles and Practices of Incineration."

Plaintiff seeks to exclude the testimony and report of Mr. Doucet and contends they are an unreliable product of flawed methodology. Defendants argue, pursuant to *Jahn v. Equine Services, PSC*, 233 F.3d 382 (6th Cir. 2000), that Mr. Doucet's methodology is sound and his testimony admissible because he is not required to account for all possible causes of the explosion and any omission in this regard goes to the weight of his testimony. The materials filed by both parties with regard to Mr. Doucet focus primarily on the parties' diverging theories of the case and offer little concrete analysis of the reliability or relevance of the report. The parties do not dispute, however, that Mr. Doucet's evaluation was explicitly limited to when the waste was received by Heritage. He was not asked to consider anything before that point.

The Court has reviewed Mr. Doucet's report, the stated intention of which is "to provide independent, objective evaluations of the role, liabilities, and responsibilities of Heritage-WTI, Inc." in connection with the December 17, 2011 explosion that resulted in Plaintiff's injuries. Doc. #87, Exhibit A, p. 2. The report begins with a summary of information described as "waste data" that Mr. Doucet believes Heritage-WTI, Inc. "knew or should have known," was "likely indicated," "derivable," "readily available," or "easily accessible." Doc. #87, Exhibit A, p. 4-12.

This includes material in Chemical Abstracts Service (CAS) data sheets and appearing on Material Safety Data Sheets (MSDS) generated by a number of companies other than Defendants who are not involved in the instant suit or otherwise identified as originators of the material involved. Doc. #87, Exhibit A, p. 10-12. The report continues to reference the process Heritage-WTI, Inc. as a Treatment Storage and Disposal Facility ("TSDF") would have undertaken in 1999 to generate a Waste Analysis Plan ("WAP").

According to Mr. Doucet, a WAP must be submitted for approval by the Ohio Environmental Protection Agency ("OEPA") before implementation and would have been necessary to allow Heritage-WTI, Inc. to dispose of the material identified by Defendants as Waste Information Profile No. 43443 and by Heritage-WTI, Inc., as Waste Profile No. 92796-1. Doc. #87, Exhibit A, p. 12-16. Mr. Doucet then summarizes the content of the WAP generated by Heritage-WTI, Inc. pursuant to the 1999 contract. Doc. #87, Exhibit A, p. 12-16. There is no dispute between the parties that Heritage-WTI, Inc. applied for and received the proper permit to dispose of waste pursuant to the 1999 contract.

Having summarized "a wide array of on-line and published technical documents, reference materials, and information sources, such as MSDS and CAS profiles, handbooks and textbooks, government publications, technical standards, and the like" that exist and are "readily and easily accessible" and the WAP process he concedes was "likely . . . conducted in 1999," Mr. Doucet then offers his opinion that WTI Heritage-WTI, Inc. was "totally and completely responsible" for the December 17, 2011 explosion and "all events and actions leading up to it." Doc. #87, Exhibit A, p. 26.

Mr. Doucet, who is not a materials engineer or fire investigator, has conducted no testing and offers no analysis explaining his conclusions. Instead, he makes statements "based on his

experience" that articulate Defendants' version of disputed facts, including: (1) the material was properly categorized as waste profile #43443/92796-1; (2) handling of the material before it was delivered to Heritage-WTI, Inc. is irrelevant; (3) Heritage-WTI, Inc.'s decision to drain the material in a "unique way served to ensure that its flammable metal constituents were far drier than typical and thus far more ignitable"; (3) Heritage-WTI, Inc. misidentified the cause of the pre-chamber event which was actually caused by draining and splitting the material; (4) Heritage-WTI, Inc.'s negligent handling caused the explosion; and (5) the immediate cause of the explosion was a spark from the tools used by Heritage-WTI, Inc. employees. Doc. #87, Exhibit A, p. 17-27. Mr. Doucet does not explain how his training or experience led to these conclusions or identify a source he relied on in reaching them.

Defendants cite *Jahn* and *Hartley v. St. Paul Fire & Marine Ins. Co.*, 118 F. App'x 914 (6th Cir. 2004) in support of their contention that Mr. Doucet's testimony satisfies what they conceive of as a diminished *Daubert* standard applicable to non-scientific expert testimony. *Hartley*, offers no explanation of relevant facts or law that supports Defendants' contentions. Defendants' conclusory statements that Mr. Doucet is "qualified," offers testimony "grounded in the relevant standard of care," and supported by factual evidence, and therefore satisfies "all that *Daubert* requires" for "testimony deriving from practical expertise" is flawed.

As the Advisory Committee Notes for the 2000 Amendments make clear, Rule 702 "does not distinguish between scientific and other forms of expert testimony." The Advisory Committee explains: "While the relevant factors for determining reliability will vary from expertise to expertise, the amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science." Fed. R. Evid. 702, Advisory Committee Notes to the 2000 Amendments. The Committee notes that where the proffered

expertise relies "solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, Advisory Committee Notes to the 2000 Amendments. Finally, when a proponent of expert testimony presents "only the experts' qualifications, their conclusions and their assurances of reliability," the Committee emphasizes, "[u]nder *Daubert*, that's not enough." Fed. R. Evid. 702, Advisory Committee Notes to the 2000 Amendments (internal citations omitted). Thus, this Court's review and gatekeeping role are in no way diminished by the nature of the proffered expert report and testimony.

Defendants' assertion that Mr. Doucet's testimony is clearly admissible under *Jahn* is equally mistaken. The Sixth Circuit rejected the trial court's analysis of the doctors' expert testimony in *Jahn*, explaining that "[s]cientific knowledge establishes the standard of evidentiary reliability, and to be considered appropriately scientific, the expert need not testify to what is known to a certainty but must only state an inference or assertion . . . derived by the scientific method." *Jahn*, 233 F.3d at 388 (internal quotation marks and citations omitted). The Sixth Circuit concluded that although the doctors were hampered by the lack of a complete medical record, "[l]ooking at the records of test results and physical symptoms to infer the presence of an infection is *not* a methodologically unsound 'assumption' or 'guess'—it is a diagnosis." *Jahn*, 233 F.3d at 391 (emphasis in the original). Because the record in *Jahn* demonstrated that the proffered testimony was generated using the same principals of diagnosis ordinarily used by physicians to identify and treat infection, the Sixth Circuit found that the supporting methodology was sound. Defendants do not identify any indicia of reliability or an identifiable methodology in support of

the material generated by Mr. Doucet. A blanket assertion that he is not required to explore all possible causes in no way remedies these deficiencies.

Instead, Mr. Doucet's report reflects the same flaws the Advisory Committee cautioned against, as well as those that led the Sixth Circuit to affirm the district court's decision to exclude the testimony of Dr. Erik Beckman in *Shahid v. City of Detroit*, 889 F.2d 1543 (6th Cir. 1989). In *Shahid*, the Sixth Circuit concluded it was proper to exclude the expert's opinion on an ultimate issue—not because the opinion embraced an ultimate issue—but because the opinion was "based on plaintiff's version of events." *Shahid*, 889 F.2d at 1547. The Sixth Circuit explained:

> The trial judge correctly stated that it was the jury's province to determine disputed facts, such as whether the officers made the required inspection every half hour . . . . based upon the credibility of testimony. . . The district court did not exclude the testimony because it related to the ultimate issue in the case, but because the court determined that it would prejudicially confuse the jury to hear an expert witness base his opinion of the ultimate issue on facts that were for the jury to determine.

*Id.* The Sixth Circuit affirmed the trial court's conclusion and continued to state an "additional reason for our view on the issue is the fact that the expert's opinion as to the ultimate issue here amounts to a 'legal conclusion'" which the Circuit has found to be an "impermissible" delegation of a judge's role. *Shahid*, 889 F.2d at 1547, *see also U.S. v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984) ("However, it is not for the witnesses to instruct the jury as to applicable principles of law, but for the judge." (internal quotation omitted)). Both defects are present in Mr. Doucet's report: he assumes Defendants' version of disputed facts and then opines on causation and liability based on those facts. As such, it does not appear that the large majority of Mr. Doucet's report and resulting conclusions are based on sufficient facts or data nor do they appear to be the product of reliable principles and methods. Moreover, they reflect all of the red flags identified by the Sixth Circuit in *Newell Rubbermaid*: reliance on anecdotal evidence, improper extrapolation, failure to

consider other possible causes, lack of testing, and subjectivity. *Newell Rubbermaid*, 676 F.3d at 527.

Defendants emphasize that Mr. Doucet's testimony is based on "practical expertise" not scientific knowledge. The Court acknowledges Mr. Doucet's extensive experience with incineration, waste disposal systems, and environmental compliance. However, the Court finds that Mr. Doucet's opinions on causation contain a material analytical gap, i.e., he links his evaluation of Heritage-WTI, Inc.'s alleged regulatory and policy failures to causation findings regarding the explosion and how the contents of the barrels responded to handling. However, he did not handle the material and is not a materials engineer or a fire expert. As such, he does not appear objectively qualified to make the latter conclusions. This error is compounded by the degree to which his conclusions are wholly dependent on Defendants' version of disputed facts. The facts on which Mr. Doucet relies are those that a jury would be required to determine. As such, it appears the proffered testimony would prejudicially confuse a jury. Accordingly, the Court finds Mr. Doucet's causation opinion is unreliable. Thus, the Court will GRANT Plaintiff's Motion to exclude Mr. Doucet's Report.

With regard to his testimony, the Court will GRANT IN PART AND DENY IN PART Plaintiff's motion to exclude Mr. Doucet's testimony. Accordingly, Mr. Doucet's testimony will be limited as follows:

(1) he will not be permitted to opine on the cause of the explosion;

(2) he will not be permitted to testify as to whether the material involved in the December 2011 explosions conformed to waste profile #43443/92796-1; and

(3) he will not be permitted to testify as to what information about flammable solids he believes could be inferred from reference materials not demonstrated to have been used by Heritage-WTI, Inc.

Mr. Doucet will be permitted to testify about the regulations and industry standards that applied to hazardous waste disposal facilities in December 2011. Mr. Doucet will also be permitted to testify as to whether, in his opinion, Heritage-WTI, Inc.'s stated policies conformed to those regulations and standards in place at the time.

### (B)   ELIZABETH C. BUC

Elizabeth C. Buc, Ph.D., P.E., C.F.I., is a materials and metallurgical engineer and Certified Fire Investigator with multiple chemistry degrees whose areas of expertise include chemistry, hazardous materials, metallurgical and plastics failure analysis, and fire and explosion investigations. Dr. Buc engages in a variety of research and engineering activities involving heat, fire, and explosion investigations, evaluations of the interaction of heat with numerous materials, and hazard assessments of organic and inorganic materials including powder metals, oxidizers, composites, and industrial waste. She is also a presenter, instructor, and conference participant on topics including "Hazardous Waste TSDF Fire Problem and Gap Analysis" and "Inspecting Facilities with Combustible Particulate Solids," as well as "Fire Investigation and Hazardous Materials."

Defendants ATI Wah Chang and ATI Precision Finishing, L.L.C. have filed a joint motion seeking to exclude opinions 3, 4, 5, 6, 7, 8, and 9 as well as potions of opinions 2, 10, and 11 offered in Dr. Buc's report. Defendants do not challenge Dr. Buc's qualifications as a chemist, engineer, or fire investigator. Instead, Defendants state that she does not possess the relevant industry experience necessary to opine on the duties imposed by the Resource Conservation and

Recovery Act (RCRA) and related regulations, the Hazardous Materials Transportation Act (HMTA) and related regulations, or industry standards. Defendants further seek to exclude Dr. Buc's opinion that information received by Heritage was inaccurate, incomplete, and misleading. Defendant Veolia ES Technical Solutions also seeks to exclude any adverse testimony from Dr. Buc because she lacks expertise in the standard of care for waste brokers and experience in the industry. Defendant Veolia does not challenge Dr. Buc's qualifications as a chemist, engineer, or fire investigator.

Both parties cite a variety of cases where experts were asked to opine outside their area of expertise and contend that this is what is being asked of Dr. Buc. *See, e.g. United States v. Lee*, 502 F.3d 691, 698 (7th Cir. 2007); *Bloom v. ProMaxima Mfg. Co.,* 669 F. Supp. 2d 321, 329 (W.D.N.Y. 2009); *Newell Rubbermaid, Inc. v. Raymond Corp.*, No. 5:08cv2632, 2010 WL 2643417 (N.D. Ohio July 1, 2010). The Court notes that although Defendant Veolia objects to Dr. Buc as a "standard of care" expert for a waste broker, she stated in her deposition that she did not offer "standard of care" testimony with regard to waste brokers and did not intend to do so. The Court finds that the objections raised by all Defendants to Dr. Buc's testimony more properly address the weight such testimony should be given, not her ability to testify. Dr. Buc is a chemist and materials engineer who, among other subjects, studies the handling and combustion of hazardous materials. As such, it appears reasonably within her capabilities to identify the properties of hazardous materials and their chemical constituents and assess where they fall in a regulatory scheme used to classify hazardous chemicals. The fact that she does not regularly do so or has, in this instance, potentially done so for the first time does not negate her demonstrated competence with the materials at issue.

The Sixth Circuit has long held that the fact that a "proffered expert may be unfamiliar with pertinent statutory definitions or standards is not grounds for disqualification. Such lack of familiarity affects the witness'[s] credibility, not his qualifications to testify." *Davis v. Combustion Engineering, Inc.*, 742 F.2d 916 (6th Cir. 1984); *see also*, *Barreto*, 268 F.3d 319 (6th Cir. 2001) (unfamiliarity with some aspects of banking relationships merely affects weight and credibility, not admissibility); *Surles ex rel. Johnson*, 474 F.3d 288 (6th Cir. 2007) (expert with experience in the threat management unit of the Los Angeles Police Department was qualified to testify despite lacking specific experience in commercial bus line threat assessment). The proper remedy for any perceived deficiencies in Dr. Buc's testimony is "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. Defendants' Motions to Exclude the testimony of Dr. Buc are DENIED.

### (C) RICHARD J. POWALS

Richard J. Powals is an engineer who has more than forty-five years of experience preparing hazardous waste profiles, including developing forms for General Motors. He has conducted commercial hazardous waste management broker activities for more than two hundred waste brokers in the United States and Canada. Plaintiff alleges that Mr. Powals' report is flawed because he ignores the actions of Defendants ATI Precision Finishing, L.L.C. and ATI Wah Chang, did not assess the role of Defendant Veolia ES Technical Solutions as a conduit of information, and does not base his opinion on the "reasonable man standard."

Mr. Powals' brief opinion consists of a straightforward statement of what he, based on his experience, considers to be the exclusive "standard of care" duties of a waste broker, his forceful disagreement with Dr. Buc's evaluation of Veolia ES Technical Solutions role, and his assessment of the cause of the December 2011 explosion. Mr. Powals does not identify any specific source

of the stated duties apart from his personal experience.  Defendants cite *First Tennessee Bank Nat. Assn. v. Barreto*, in support of their contention that Mr. Powals' experience is a sufficient basis for his opinion.  *Barreto*, 268 F.3d 319.  In *Barreto* the Sixth Circuit concluded that the *Daubert* standards were unhelpful in assessing expertise derived solely from practical experience and that such expertise may be admissible where it is reliable and relevant.  *Id.* at 335.  Plaintiff identifies no meaningful defect in Mr. Powals' extensive experience, which includes many years of waste broker operations throughout the United States and Canada.  However, Plaintiff emphasizes that its claims arise from a basic theory of negligence in the context of Defendant Veolia ES Technical Solutions actual role as an information conduit, not from any standard of care unique to waste brokers.

The regulatory framework and industry practices involved in the activities of waste brokers are specialized knowledge and Mr. Powals appears qualified to explain many aspects of that knowledge.  While Mr. Powals has succinctly described what appears to be the industry standard responsibilities of a waste broker, those basic duties may vary by contract or conduct.  For these reasons, the Court concludes Mr. Powals will be permitted to testify as to the standard practices and responsibilities of waste brokers within the hazardous waste industry.  However, his testimony will be limited to characterizing industry standards and customs.  Any instruction as to a duty of care in the context of negligence will be made by the Court.

With regard to causation and the role of Heritage-WTI, Inc., Mr. Powals' report evidences the same defects the Court identified in Mr. Doucet's report.  Accordingly, Mr. Powals, who offers no analysis or explanation, did not handle the material, is not a materials engineer or a fire expert, and does not appear objectively qualified to evaluate the cause of the explosion, will not be permitted to testify as to the cause of the December 2011 explosion.  Accordingly, Plaintiff's

motion to exclude the report and testimony of Mr. Powals is GRANTED as to the report, and GRANTED IN PART AND DENIED IN PART as to the testimony.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motions to exclude the reports and testimony of Richard J. Powals (Doc. #87) and Lawrence G. Doucet (Doc. # 88) are GRANTED IN PART AND DENIED IN PART.  Defendants Veolia ES Technical Solutions, ATI Wah Chang, and ATI Precision Finishing, LLC motions to exclude testimony of Plaintiff's expert Elizabeth C. Buc (Docs. #106 and 109) are DENIED.

**IT IS SO ORDERED**.


*/s/ John R. Adams*
**U.S. DISTRICT JUDGE**
**NORTHERN DISTRICT OF OHIO**

Date:   October 11, 2017